# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | § § § | |
| Evette Nicole Reed, | § § | Case No. 14-44818-705 |
| Debtor. | § § § | |
| In re: | § § | |
| Pauline A. Brady, | § § | Case No. 14-44909-705 |
| Debtor. | § § § | |
| In re: | § § | |
| Lawanda Lanae Long, | § § | Case No. 14-45773-705 |
| Debtor. | § § § | |
| In re: | § § | |
| Marshall Beard, | § § | Case No. 14-43751-705 |
| Debtor. | § § § | |
| In re: | § § | |
| Darrell Moore, | § § | Case No. 14-44434-705 |
| Debtor. | § § § | |
| In re: | § § | |
| Nina Lynne Logan, | § § | Case No. 14-44329-705 |
| Debtor. | § § § | |
| In re: | § § | |
| Jovon Neosha Stewart, | § § | Case No. 14-43912-705 |
| Debtor. | § § § | |
| In re: | § § | |
| Angelique Renee Shields, | § § | Case No. 14-43914-705 |
| Debtor. | § § | |

1

### ORDER REGARDING CERTAIN ALLEGATIONS, REPRESENTATIONS, AND REQUESTS FOR RELIEF IN THE ROBINSON RESPONSE

On January 2, 2015, James C. Robinson, an attorney who currently is suspended from the privilege of practicing before this Court, filed a response (the "Robinson Response") in the above-referenced cases (the "Cases") to the three pending Show Cause Orders (as defined herein) entered by the Court and the pending Motion to Compel Turnover jointly filed by the chapter 7 trustees (the "Chapter 7 Trustees") in the Cases. The Court now finds that certain allegations in the Robinson Response are false, directs Mr. Robinson to produce certain documents related to allegations in the Robinson Response, and orders that certain requests for relief in the Robinson Response be denied. Nothing herein prejudices Mr. Robinson from making non-vexatious argument or presenting relevant, admissible evidence at the upcoming hearings on the Show Cause Orders and the Motion to Compel Turnover.

### I. FACTS

***Mr. Robinson's Suspension from the Privilege of Practicing Before this Court.*** On June 10, 2014, Mr. Robinson was suspended from the privilege of practicing before this Court for, among other things, contempt and the willful and unexcused refusal to participate in discovery. (Memorandum and Order, as amended, in *In re Latoya Steward*, Case No. 13-46399-705.) During his suspension, Mr. Robinson may not practice before this Court in any capacity, in any case, on behalf of any person, other than in representation of himself. He may not serve as co-counsel. The Court records indicate that, prior to being suspended, Mr. Robinson collected fees from the debtors in these Cases (the "Debtors"). The records also indicate that, due to his suspension, Mr. Robinson could not have rendered some or all of the services for which he collected fees. However, as of November 26, 2014, Mr. Robinson had not returned any unearned portion of his fees.

***The First Show Cause Order.*** On November 26, 2014, in the first six of the above-captioned eight cases (the "First Six Cases"), the Court entered an Order Directing (I) James Robinson to Show Cause as to Why His Fees Should

2

Not Be Disgorged Under § 329(b), and (II) the Chapter 7 Trustee to Provide Information Related to Fees (the "First Show Cause Order"). In each of the First Six Cases, the records show that Mr. Robinson collected fees prior to his suspension, but that the cases were filed only after his suspension. Since Mr. Robinson could not file the cases, another attorney, Mr. Ross Briggs,[1] filed the cases and represented the debtors. However, Mr. Briggs could not "earn" Mr. Robinson's fees for him, regardless of Mr. Robinson's contention that the "clients were serviced[2] in a competent manner." In addition, Mr. Robinson's assertion that his fees were only for "preparation services" is dubious. Mr. Robinson is not a non-lawyer bankruptcy petition preparer; until his suspension, he was a lawyer who was retained to prepare, file, and represent clients in bankruptcy cases.

Accordingly, in the First Show Cause Order, the Court ordered Mr. Robinson to show cause why any unearned fees he held should not be ordered disgorged pursuant to § 329(b) of title 11 of the United States Code, the statute that permits disgorgement to the estate of debtor's attorney's fees that are excessive.[3] It also ordered the Chapter 7 Trustees to address certain issues related to the fees, including: to whom, specifically, the fees were paid; where the fees were held following payment; where the fees are held today; and whether any of those fees have been disbursed to Mr. Robinson, any attorney affiliated or otherwise associated with (formally or informally) Critique Services L.L.C. or any permutation of Critique Services L.L.C., to any employee, officer, or owner of Critique Services L.L.C., or to any other person. The Court advised that while it

---

[1] Mr. Briggs has a long-time professional affiliation with Mr. Robinson's "firm," Critique Services L.L.C., and has his own history of making misleading representations to this Court, in connection with his efforts to represent Mr. Robinson's former clients following Mr. Robinson's suspension.

[2] Presumably, Mr. Robinson means "served," not "serviced."

[3] Section 329 provides that "if [compensation paid or agreed to be paid to an attorney representing a debtor in connection with a bankruptcy case] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—(1) the estate, if the property transferred—(A) would have been property of the estate . . ."

3

would welcome Mr. Robinson voluntarily providing to the Chapter 7 Trustees any portion of any fees in any case that were paid to him but which he did not earn, doing so at this point would not make the show cause inquiry moot. Returning the fees now would not resolve whether there was impropriety by Mr. Robinson in failing to timely return the fees.

***The Second Show Cause Order.***  On December 2, 2014, the Court entered an Additional Order (the "Second Show Cause Order"), adding two more cases (the final two above-captioned cases (the "Additional Two Cases")[4] to the show cause inquiry. In the Second Show Cause Order, Mr. Robinson again was directed to show cause as to why the fees that he collected prior to his suspension should not be ordered disgorged to the estate pursuant to § 329(b). In the Additional Two Cases—unlike in the First Six Cases—Mr. Robinson had filed the cases before his suspension. However, the records appear to indicate that Mr. Robinson failed to render all legal services required in those cases prior to his suspension. For example, the dockets show that the § 341 meetings of creditors were conducted on June 17, 2014—after Mr. Robinson's suspension. Mr. Robinson could not have represented his clients at this statutorily required, critical meeting.[5] The directives in the Second Show Cause Order were similar to the directives in the First Show Cause Order.

***The Return of the Fees.*** Shortly after the issuance of the First and Second Show Cause Orders, Mr. Briggs filed amended schedules in certain of the Cases, representing that, on December 6, 2014, Mr. Robinson returned the fees to those Debtors—although it is not clear whether Mr. Robinson provided the fees to the chapter 7 trustee, as instructed by the Court, or to the Debtors directly. Mr. Briggs also filed amended schedules for those Debtors, claiming an exemption in the fees. As such, it appears that Mr. Robinson knowingly held, for many months, unearned fees, and returned those fees only in the face of the

---

[4] The Additional Two Cases are *In re Stewart* and *In re Shields*.

[5] The Court also notes that, according to its records, the Debtors in the Additional Two Cases had no (non-suspended) counsel on the date of their § 341 meetings. Mr. Briggs did not first appear for those debtors until more than a month later.

4

First and Second Show Cause Orders. It is unexplained why Mr. Briggs made no attempt over the six months to advocate before this Court for his clients' interests in the fees.

***The Third Show Cause Order.*** On December 10, 2014, the Court issued a third show cause order (the "Third Show Cause Order," collectively with the First and Second Show Cause Orders, the "Show Cause Orders") in the Cases. In the Third Show Cause Order, the Court advised that it was concerned that this forum and these Cases were used as vehicles by Mr. Robinson to improperly retain property of the estate. It appeared that Mr. Robinson had kept his unearned fees for months, assuming the Court would not notice and the chapter 7 trustees would not care,[6] and did not return the fees until faced with a show cause order. In addition, the Court expressed concern that Mr. Robinson violated the rules of professional conduct by failing to timely return unearned fees—and the Court cannot permit this forum to openly host such behavior. The Court required an accounting of where the fees have been since Mr. Robinson's suspension and why they were not returned sooner.

***The Motion to Disqualify the Judge.*** On December 10, 2014, Mr. Robinson filed a Motion to Disqualify the Judge. On December 11, 2014, he filed an Amended Motion to Disqualify. The request for disqualification was an untimely re-hash of the numerous unmeritorious motions to disqualify that Mr. Robinson had filed in the *Steward* litigation. On December 11, 2014, the Court entered an order denying the request for disqualification.

***The Motion to Compel Turnover.*** On December 12, 2014, the Chapter 7 Trustees filed a joint Motion to Compel Turnover, seeking the turnover of certain information and documents allegedly held by Mr. Robinson, Mr. Briggs, and Critique Legal Services. This request for turnover was made in connection with

---

[6] These Cases are not the only cases in which Mr. Robinson may have kept unearned fees following his suspension. The Cases listed above are only a sampling of the cases involving Mr. Robinson's former clients. Mr. Robinson may be in possession of fees collected but unearned from many other debtors in cases before this Court.

5

the Chapter 7 Trustee's effort to meet their obligations under the Show Cause Orders. The Motion to Compel is set for hearing on January 13, 2015.

***The Response to the Motion to Compel filed by Mr. Briggs.*** On December 13, 2014, Mr. Briggs filed a Response to the Motion to Compel (the "Briggs Response"), advising that he is not in possession of the documents and information requested by the Chapter 7 Trustees. He also insisted that his representation of the Debtors was done on an "emergency" basis, blaming the "emergency" on the Court, the United States Trustee (the "UST"), and unnamed law firms.[7] Mr. Briggs's self-serving self-portraiture as an attorney selflessly providing urgent pro bono services is patent nonsense. First, there was no "emergency." The consequences of the suspension were entirely avoidable and entirely within Mr. Robinson's control.  Mr. Robinson had known for weeks, if not months, that he was in jeopardy of being suspended, and did nothing to avoid the suspension or protect his clients upon his suspension.  Second, Mr. Briggs did not act altruistically in representing Mr. Robinson's former clients. Shortly after Mr. Robinson's suspension, Mr. Brigg began filing Notices of Appearance and Bankruptcy Rule 2016(d) Attorney Compensation Disclosures in pending cases of Mr. Robinson's former clients.  In those papers, Mr. Briggs represented that he would serve as "co-counsel" with Mr. Robinson (who, of course, was not capable of serving as co-counsel due to the suspension) and that he would provide his services on a fee-sharing basis. In response, the Court issued orders striking Mr. Briggs's Notices of Appearance that made a "co-counsel" representation, and denying the Bankruptcy Rule 2016(b) statements in which Mr. Briggs claimed to have a fee-sharing relationship. The reason that Mr. Briggs is now representing the Debtors before this Court free-of-charge is not due to any charitable initiative on the part of Mr. Briggs.  It is because the Court entered orders determining that

---

[7] Mr. Briggs claims that the "emergency" was created because "neither the Bankruptcy Court, the [UST], nor any other law firm had made provision for the protection of the legal rights of Mr. Robinson's former clients after his suspension."  This contention has no basis in law or reality.  Mr. Robinson's contempt and abuse of process, and his refusal to prepare for the foreseeable sanctions, resulted in his clients being left without counsel.

6

Mr. Briggs was deemed to have agreed to serve as sole counsel on a pro bono basis, and directing Mr. Briggs to file Bankruptcy Rule 2016(b) statements to that effect (which Mr. Briggs ultimately did).

To any degree, the issue of whether Mr. Briggs may be compelled to produce information and documents will be taken up at the January 13 hearing. The Briggs Response—which boils down to the assertion that Mr. Briggs does not have any responsive material and cannot be compelled to turn over anything on behalf of Critique Legal Services—will be considered then.

***The Response to the Show Cause Orders and the Motion to Compel Turnover filed by Mr. Robinson.*** On January 2, 2015, Mr. Robinson filed the Robinson Response in which he "responds, objects and moves to [d]ismiss" the Show Cause Orders and the Motion to Compel. Upon review of the Robinson Response, the Court now enters this Order for three purposes. First, this Order recognizes certain factual allegations in the Robinson Response to be false.[8] Second, this Order identifies representations in the Robinson Response that suggest that Mr. Robinson and Mr. Briggs entered into an agreement to transfer property of the estate without Court authority. The Court expects an accounting of such agreements. Third, this Order determines the merits of the requests made in the Robinson Response that are not directly responsive to the show cause inquiry, but instead seek forms of relief that would allow Mr. Robinson to avoid having to respond to the show cause inquiry.

## II. ANALYSIS

### A. The False Allegations

The Robinson Response is replete with misstatements of the law, misleading allegations, incoherent arguments, and unsupported proclamations of "rights"—all of which are too numerous to detail here. However, there are several factual allegations that are demonstrably false, which the Court identifies below.[9]

---

[8] This Order may not identify every false allegation in the Robinson Response; it points out only those that the Court believes are the most obvious and significant.

[9] In addition to containing false allegations, the Robinson Response also quotes language from previous orders of the Court, liberally underlining words and

7

**1. The False Allegation of Racial Discrimination.**

Mr. Robinson cites the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and falsely alleges that the Show Cause Orders were issued because he is a minority.[10] In support of this charged claim, he points to nothing other than his minority status. This desperate accusation is legally pathetic and professionally despicable. Mr. Robinson exploits his minority status in transparent effort to distract and obfuscate—apparently being willing to say anything, regardless of how unfounded and outrageous, to avoid responding to the Show Cause Orders. Mr. Robinson maligns a federal court with a slur of racism, encouraging unwarranted public mistrust of the legal system. He works a profound disservice upon those who actually suffer racial discrimination, by falsely equating their experiences to his. This is not merely vexatious litigation. This is not merely disreputable lawyering. This is the complete absence of shame. It is new low, even for Mr. Robinson, who already had a history of dishonest and disgraceful behavior before this Court. Mr. Robinson would be well-served to focus on intelligibly and intelligently responding to the Show Cause Orders, rather than standing on his fictional claim of victimhood.

**2. The False Allegation of Directives to the "U.S. Trustees."**

Mr. Robinson makes the false allegation that the Court directed the "U.S. Trustees" to act, and insists that the "U.S. Trustees" lack standing. However, the Court directed the Chapter 7 Trustees account to the Court. The Court did not direct the UST, or an attorney representing the UST, to act in connection with the Show Cause Orders.

**3. The False Allegation of Directives to Collect the Fees.**

Mr. Robinson makes the false allegation that the Court directed the UST to collect Mr. Robinson's fees. However, as noted above, the Court did not direct the UST to act. Moreover, the Court did not direct the Chapter 7 Trustees to

---

phrases, but without indicating that the underlining is his, and was not in the original order. This leaves the false impression that the Court included Mr. Robinson's excessive underlining and overly dramatic emphasis in its orders.

[10] Presumably, Mr. Robinson refers to the fact that he is African-American.

8

collect the fees. The Court directed the Chapter 7 Trustees to advise the Court as to the status of the fees. The fact that Mr. Robinson was free to return the fees to the estate by remitting them to the Chapter 7 Trustee does not impose the obligation upon the Chapter 7 Trustees that they must seek to collect the fees for the purposes of complying with the Show Cause Orders.

### 4. The False Allegation of Persons Subject to the Show Cause Orders.

In the prayer paragraph, Mr. Robinson makes the false allegation that the Court ordered Mr. Briggs and Critique Legal Services to show cause. As shown by the plain language of the Show Cause Orders, Mr. Briggs and Critique Legal Services are not respondents to the Show Cause Orders.

### 5. The False Allegation of Denial of a Hearing.

Mr. Robinson makes the false allegation that he is being denied a hearing on the Show Cause Orders and the Motion to Compel. This assertion is directly contrary to the record. The Motion to Compel is set for hearing next week, on January 13, 2015, and the Show Cause Orders are set for hearing the week after, on January 21, 2015. What Mr. Robinson appears to argue is that the Court was required to hold a hearing before issuing of the Show Cause Orders. However, a party is not entitled to a hearing to determine whether the Court may issue a show cause order. The Court does not need Mr. Robinson's input or permission before issuing a show cause order against him.

### B. The Representation Regarding Agreement to Transfer of Fees

Mr. Robinson states that he and Mr. Briggs entered into a "compromise and settlement" that resulted in the transfer of the fees:

> Respondent hereby acknowledges the execution of all attorney fees paid were in compromise and settlement of disputed claims and said execution was not to be deemed as an admission of liability by Respondent or any party; and such liability being expressly denied, as communicated to the debtor's attorney and to the debtors in the presence of their attorney, on December 6, 2014. (See Respondent's Exhibit A1-G)

It is unclear whether any such "compromise and settlement" was oral or written, as no Exhibit A1-G was attached. More importantly, it is unclear how any such compromise and settlement could have been lawfully entered or how the fees

9

could have been lawfully transferred, to the degree that they were unearned. Unearned fees are excessive for the services rendered, and must be disgorged to the estate—which is the point of the Show Cause Orders. (The Debtors, in fact, admitted that the returned fees are property of the estate, when they sought an exemption. Property cannot be exempted from the estate unless it was property of the estate to begin with.) The chapter 7 debtors, represented by Mr. Briggs, were not free to enter into any compromise and settlement—orally or written—involving the transfer of the property of the estate. Compromises and settlements involving property of the estate must be approved by the Court upon a motion brought by the chapter 7 trustee under Bankruptcy Rule 9019.

In addition, Mr. Robinson admits that, on December 6, 2014, his fees collected in the *In re Long*, *In re Moore*, and *In re Logan* matters were transferred to Mr. Briggs. This also is a concerning admission. Mr. Briggs agreed to take *In re Long* for free and had already been paid for his services *In Moore* and *In re Logan* and had agreed not to fee share. Why the fees, some or all of which may be property of the estate, were transferred to Mr. Briggs, and on what authority, is unclear.

**The Court DIRECTS Mr. Robinson to bring to the January 13 hearing the original of every such "compromise and settlement" between and among Mr. Robinson and each above-referenced debtor, and the original of any agreement between himself and Mr. Briggs regarding the transfer of fees in the *In re Long*, *In re Moore* and *In re Logan* matters. Further, the Court gives NOTICE to Mr. Robinson that his failure to comply with this directive may result in the imposition of sanctions.** Further, the Court notes that, regardless of any "agreement" Mr. Robinson and Mr. Briggs may have come up with concerning the transfer of the fees—in the privacy of their offices, behind closed doors, as they planned their responses to the Chapter 7 Trustees' inquiries and the Show Cause Orders—such agreements do not bind the Court in determining the issues raised in the Show Cause Orders and the Motion to Compel Turnover.

### C. The Requests for Relief

**1. The Demand for Relief under 28 U.S.C. § 144.**

Mr. Robinson demands relief under 28 U.S.C. § 144, which provides that a judge shall "proceed no further" in a matter upon the filing of a sufficient affidavit attesting to the judge's bias. In the *Steward* litigation, Mr. Robinson and his co-respondents also had demanded that the Judge disqualify under § 144. As the Court repeatedly explained in orders entered in the *Steward* litigation, it is well-established law that, by the plain language of the statute, § 144 applies only to U.S. District Court judges.  It does not apply to U.S. Bankruptcy Court judges. Mr. Robinson cites no authority to the contrary. Moreover, even if § 144 applied, Mr. Robinson still failed to show that relief is proper. Section 144 requires the filing of a "sufficient affidavit" in support.  No affidavit was filed.

**2. The Demand for "Referral" of the Cases.**

Mr. Robinson demands that "this matter" be "referred" to the U.S. District Court. He offers no basis for such relief, and, in fact, there is no mechanism by which the Court may "refer" a matter to the U.S. District Court. Referral of bankruptcy matters is a one-way street: the U.S. District Court refers bankruptcy matters to the U.S. Bankruptcy Court pursuant to its standing order of automatic reference. This Court has no authority, statutory or otherwise, to "refer" a matter back to the U.S. District Court.  And this Court certainly has no authority to direct the U.S. District Court to hear a particular matter.  And while a party may file a motion to withdraw the reference, such motion is made to U.S. District Court. This Court does not determine a request to withdraw of the reference.

**3. The Demand for Dismissal Based on an Alleged Lack of Jurisdiction.**

Mr. Robinson seeks dismissal based on an alleged lack of jurisdiction.  As to the request for dismissal of the Show Cause Orders: one cannot obtain "dismissal" of a show cause order under Federal Rule of Civil Procedure ("Rule") 12(b) or by any other mechanism. A show cause order is not a request by a party for relief; it is a directive from the Court to respond—and thus, it is not subject to a request for "dismissal." The plain language of Rule 12(b)(1) makes this clear: "Every defense to a claim for relief in any pleading must be asserted in the

11

responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction . . ." Fed. R. Civ. P. 12(b)(1). Responding to a show cause order does not involve making a "defense" because there is no "claim for relief" for the party to defend against, and there is no subject "pleading" (a document filed by a party requesting relief from the court). Responding to a show cause order involves responding to a directive set forth in a court order. As such, Mr. Robinson has a choice: he may respond to the Show Cause Order and endeavor to show that cause exists for the Court to decline to order sanctions or other relief; or, he may decline to respond to the Show Cause Order and risk the Court deeming his failure to respond to be an admission. Further, Mr. Robinson is free to appeal and raise jurisdiction as a ground. However, dismissal is not a vehicle available to Mr. Robinson.

As to the request for dismissal of the Motion to Compel Turnover: Mr. Robinson states that he does not "consent" to jurisdiction. However, jurisdiction is not established by Mr. Robinson's consent. The Court has subject matter jurisdiction over the issues raised in the Motion to Compel Turnover and has personal jurisdiction over Mr. Robinson, who accepted fees in connection with a case filed before this Court. Mr. Robinson also argues that because he allegedly returned the fees on December 6, 2014, the Court now lacks jurisdiction. However, Mr. Robinson's alleged returning of the fees does not deprive the Court of jurisdiction over the Motion to Compel Turnover. The Chapter 7 Trustees are still compelled to respond as directed in the Third Show Cause Order.

**4. The "Objections" to the Show Cause Orders.**

Mr. Robinson purports to "object" to the Show Cause Orders. However, one does not object to a court order; one objects to a request or action of a party. Moreover, Mr. Robinson does not appear to understand that the directives in the Show Cause Orders are not discovery requests. The Court is not a party; it does not conduct discovery; it does not issue interrogatories. Yet, Mr. Robinson incorrectly calls the Court's directives "interrogatories," then "objects" to them as though they are interrogatories. However, mischaracterizing the Court's

12

directives as interrogatories, in an attempt to challenge them as interrogatories, amounts to a non-response to the Show Cause Orders.

### III. CONCLUSION

For the reasons set forth above, the Court **ORDERS** that:

(i) any request for relief based on the false allegation that the that the Show Cause Orders were issued due to racial discrimination be **DENIED**;

(ii) any request for dismissal of the Motion to Compel for an alleged lack of standing be **DENIED**;

(iii) any request for relief based on an alleged lack of due process be **DENIED**;

(iv) any request for relief based on an alleged failure to conducting a hearing be **DENIED**;

(v) the request for relief under 28 U.S.C. § 144 be **DENIED**;

(vi) the request for "referral" to the U.S. District Court be **DENIED**;

(vii) the request for dismissal based on a lack of jurisdiction be **DENIED**;

(viii) the "objections" to the Show Cause Order be **OVERRULED**; and

(ix) Mr. Robinson be directed bring to the January 13, 2015 hearing the original of every settlement between and among Mr. Robinson and any Debtor, and the original written agreement between himself and Mr. Briggs regarding the transfer of fees paid to Mr. Robinson the *In re Long, In re Moore* and *In re Logan* matters.

DATED: January 9, 2015
St. Louis, Missouri 63102
mtc

CHARLES E. RENDLEN, III
U.S. Bankruptcy Judge

13

Copy Mailed To:


**Copy Mailed To:**

**Ross H. Briggs**
Post Office Box 58628
St. Louis, MO 63158

**James Clifton Robinson**
Critique Services
3919 Washington Blvd.
St. Louis, MO 63108

**Robert J. Blackwell**
Blackwell and Associates (trustee)
P.O. Box 310
O'Fallon, MO 63366-0310

**David A. Sosne**
Summers Compton Wells LLC
8909 Ladue Rd.
St. Louis, MO 63124

**Tom K. O'Loughlin**
O'Loughlin, O'Loughlin et al.
1736 N. Kingshighway
Cape Girardeau, MO 63701

**Kristin J Conwell**
Conwell Law Firm LLC
PO Box 56550
St. Louis, MO 63156

**Seth A Albin**
Albin Law
7710 Carondelet Avenue
Suite 405
St. Louis, MO 63105

**Office of US Trustee**
111 S Tenth St, Ste 6.353
St. Louis, MO 63102