**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     Evette Nicole Reed, | ) | Case No. 14-44818-705 |
| | ) | |
|                       Debtor. | ) | |
| In re: | ) | |
| | ) | |
|     Pauline A. Brady, | ) | Case No. 14-44909-705 |
| | ) | |
|                       Debtor | ) | |
| In re: | ) | |
| | ) | |
|     Lawanda Lanae Long, | ) | Case No. 14-45773-705 |
| | ) | |
|                       Debtor | ) | |
| In re: | ) | |
| | ) | |
|     Marshall Beard, | ) | Case No. 14-43751-705 |
| | ) | |
|                       Debtor | ) | |
| In re: | ) | |
| | ) | |
|     Darrell Moore, | ) | Case No. 14-44434-705 |
| | ) | |
|                       Debtor | ) | |
| In re: | ) | |
| | ) | |
|     Nina Lynne Logan, | ) | Case No. 14-44329-705 |
| | ) | |
|                       Debtor | ) | |
| In re: | ) | |
| | ) | |
|     Jovon Neosha Stewart, | ) | Case No. 14-43912-705 |
| | ) | |
|                       Debtor | ) | |
| In re: | ) | |
| | ) | |
|     Angelique Renee Shields, | ) | Case No. 14-43914-705 |
| | ) | |
|                       Debtor | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
CRITIQUE SERVICES, LLC'S MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION BECAUSE OF MOOTNESS**

As shown in the Motion and the exhibits attached thereto, the eight Debtors were all discharged in their Chapter 7 Bankruptcies before this Court initiated a show cause Order and proceeding to disgorge fees pursuant to §329(a)[1] from attorney James Robinson, the proceedings later involved attorney Ross Briggs who represented six of the eight Debtors after attorney Robinson's suspension. That proceeding was initiated at the end of November 2014. It was not until January 23, 2014 that an Order to produce documents included not only these two attorneys, but also Critique Services, LLC. There is no pleading that names Critique Services, LLC as liable for the fees to be disgorged. In the original Show Cause Order, the Bankruptcy Court demanded more than information necessary to determine whether fees should be disgorged. It also demanded to know how money was handled by attorney Robinson, how each Debtor was being served before attorney Robinson's suspension from practicing before the Bankruptcy

---

[1] 11 U.S.C. §329 and both subparts reads as follows: Debtor's transactions with attorneys
   (a)   Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
   (b)   If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to –
      (1)   the estate, if the property transferred –
          (A)   would have been property of the estate; or
          (B)   was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this *title [11 USCS §§1101* et seq., *1201* et seq., or *1301* et seq.); or
      (2)   the entity that made such payment.

Page 2 of 9

Court, and the nature of attorney Robinson's relationship with Critique Services, LLC.

Attorney Robinson returned the fees to each of these eight Debtors that each had paid before the Order to produce documents was issued by the Bankruptcy Court on January 23, 2015. In the case of the six Debtors represented by attorney Briggs, Amended Schedules were filed showing that the fee returned by attorney Robinson in each of their cases was their property having been included in each Debtor's Amended Schedule of exempt property. For the two Debtors who attorney Briggs did not represent after attorney Robinson's suspension and who were not represented by any other attorney after attorney Robinson was suspended, the Schedules that were originally filed in their bankruptcies show that their miscellaneous or personal exemption amount had not been exhausted and that the addition of the returned fee was well within the limits of each Debtor's exemption. Therefore, none of the amounts returned by attorney Robinson ultimately belonged to the bankruptcy estates of any of the eight Debtors.

Any fees returned by any means are available for use as part of each Debtor's exemption and the debtor may so use them. In Re: Wilson, 694 F.2d 236 (11th Cir. 1982) which states that "refunded attorney's fees become general property of the estate available to the Debtor to fund exemptions to which he is otherwise entitled." 694 F.2d 239. The Trustees for each of the eight Debtors in this case have no interest in the returned fees and therefore, no interest in these proceedings.

According to the handbook for Chapter 7 Trustees which became effective in July 2002, the Trustees should not spend their time in pursuing this claim. The appointment of Chapter 7 Trustees by the United States Trustee which was established by statute in the late 1970's, 28 U.S.C. §586, addressed the previous conflict of interest that had existed when the bankruptcy

Page 3 of 9

judges appointed and supervised Chapter 7 Trustees thereby rendering their impartiality questionable, at the least, and establishing a conflict of interest for the Trustees between serving the judiciary and serving the debtors. The judicial and administrative functions within the Bankruptcy court were bifurcated with the administrative functions removed from the province of bankruptcy judges and established with the United States Trustee. The United States Trustee was required to establish guidelines to be applied uniformly by the individual Chapter 7 Trustees. 28 U.S.C. §586. Handbook for Chapter 7 Trustees at pp. 1-3.

Pursuant to the Handbook, the individual Chapter 7 Trustees principle duty is to collect and liquidate the property of the bankruptcy estate. The individual Chapter 7 Trustees are specifically admonished not to administer any asset of a bankruptcy estate where the proceeds from that asset will principally benefit themselves or other professionals. They should only work on matters that will create a "meaningful distribution to creditors." Handbook for Chapter 7 Trustees at pp. 6-1. In each individual case of these eight Debtors, there is no money to be distributed to the bankruptcy estate and nothing for the individual Chapter 7 Trustees to do.

In the Handbook, a Chapter 7 Trustee is admonished to review the fees charged the Debtor by the Debtor's attorney and if necessary, pursuant to 11 U.S.C. §329(b), to seek the disgorgement of any fee that is excessive and the return of all or any portion of any such fee. Handbook for Chapter 7 Trustees at pp. 6-10. However, in this case, the fees have all been returned and the Trustees have nothing further to do in these regards.

The records of each of these eight individual Debtors shows that they were all cases of no distribution for creditors. The individual Chapter 7 Trustees for these eight Debtors never objected to the amended exemptions filed by attorney Briggs in the six cases in which he was

involved nor did they object in the other two cases for that money to be included in those Debtors' exemptions. None of the Trustees in the case of each of these eight Debtors has sought to have any Debtor pay the fees returned to them into their bankruptcy estates. Handbook for Chapter 7 Trustees at pp. 8-3-4. The Chapter 7 Trustees should be dismissed from these proceedings to disgorge fees.

There is no case which supports this Court, pursuant to a Proceeding to Disgorge fees under §329, providing any relief to these eight Debtors besides the return of fees paid or granting any other relief against attorney Robinson. For example, in In re: Hepburn, 84 B.R. 855 (Bk. Ct. S.D. FL 1988), a bankruptcy judge ordered the attorney for the debtor to return the entire Seven Hundred and Fifty dollars ($750) fee paid by the debtor forthwith. In Arnes v. Boughton (In Re: Prudhomme); 43 F.3d 1000 (5th Cir. 1995) the Court of Appeals affirmed a decision to order the disgorgement of the entire fee for failure of the debtor's attorney to disclose the retainer fee paid as required by 11 U.S.C. §329(a). Although not a case in which there was an adjudication of unreasonable excessiveness of a fee, another ground for ordering disgorgement under §329, the only remedy the Court of Appeals had available under this statute was to provide the disgorgement of the entire fee. There was no other remedy that was even hinted at. See also, Law Offices of Nicholas A. Franke v. Tiffany (In Re: Lewis), 113 F.3d 1040 (9th Cir. 1997). Schroeder v. Rouse, (In Re: Redding), 263 B.R. 874 (BAP for 8th Cir. 2001) and Leinbach v. Reigle (In Re: Ramelah), 2009 U.S. Dist. LEXIS 38155 (ED PA 2009).

By the explicit terms of 11 U.S.C. §329(b) the only remedy available under a proceeding to disgorge a fee is for the court to "return any such payment (the amount paid for fee) to the extent excessive." 11 U.S.C. §329(b). The statute does not provide for any other remedy

Page 5 of 9

including the monitoring of how an attorney administers his office or what was done with the fee before being returned. This is so even in cases where non-disclosure of a fee may well have been a result of much more than negligence, *i.e.*, Schroeder v. Rouse, *supra*.

The Bankruptcy Court stated in its January 23, 2015 Order it has powers under 11 U.S.C. §105(a)[2] to continue with the Proceedings to Disgorge fees in spite of their repayment and to seek redress beyond the repayment of fees permitted by §329. It justifies its seeking inquiry into how the law offices of attorneys Robinson and Briggs operated and their relationship with Critique Services, LLC through use of §105(a). However, §105(a) cannot create rights that do not exist in the bankruptcy code. Law v. Siegel, 134 S. Ct. 1188 (2014). In that case, debtor Law created a false second mortgage on his house so that the equity remaining after taking into account the legitimate first mortgage and the false second mortgage fell within the Seventy-Five Thousand dollar ($75,000) exemption allowed under California's Homestead Law. Without the fraudulent second mortgage, the Trustee would have sold the house and reserved the $75,000 for Law's exemption and kept the remaining equity for the bankruptcy estate.

The Supreme Court ruled that even though the bankruptcy court has authority under §105(a) to exercise its equitable powers to do what is necessary to enforce provisions of the bankruptcy code, it does not have the power to create new provisions or to contravene mandates of the code. It stated that the "courts' inherent sanctioning powers are likewise subordinate to

---

[2] 11 U.S.C. §105(a) provides:
    (a)    The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

valid statutory directives and prohibitions." It clarified that the equitable powers that exist as granted by §105(a) can only be used within the "confines of" the bankruptcy code. 134 S. Ct. at 1194. In its ruling, the Supreme Court emphasized that provisions of the bankruptcy code are compromises for taking action under a multiplicity of possible circumstances and that those compromises must be honored even if it seems inequitable to do so under the circumstances of a particular case.

This admonition applies in this case in which this Bankruptcy Court seeks to extend its authority under §329 through use of §105(a) to inquire into matters that are not explicitly covered thereunder. See Grede v. F.C. Stone, LLC, 746 F.3d 244 (7th Cir. 2014). In that case, a bankruptcy court and district court extended powers it wanted to have under 11 U.S.C. §546(e) beyond that which was authorized by statute. The 7th Circuit prohibited that.

In a case very comparable to the one now before this Court, both the bankruptcy court and the district court in Northern Iowa understood and applied the same reasoning the Supreme Court later applied in Law v. Siegel, *supra*, to explain that a bankruptcy court's powers under §105(a), while broad, are still limited. In Re: Miell, 2009 Bankr. LEXIS 2064 (Bk. Ct. for ND IA 2009) affirmed in 2009 U.S. Dist. LEXIS 73757 (ND IA 2009). In that case, the debtor sought to have payment for the attorneys fees in a Chapter 11 case come from the bankruptcy estate similar to what is allowed under 11 U.S.C. §330(a) and its subpart in other types of bankruptcies. However, that statute does not apply to Chapter 11 cases.

The bankruptcy court and the district court in In Re: Miell explicitly stated that §105(a) cannot be used to create a remedy that is not provided for in the Bankruptcy Code. The bankruptcy court could not make payment of attorneys fees in Chapter 11 cases the same as

allowed for in Chapter 12 and 13 cases as explicitly provided under §330(a). The two courts stated that it was not appropriate to use §105(a) to establish a new means for awarding attorneys fees in a Chapter 11 case that was not provided for in statute. Similarly, in the instant case, §329 only provides for the disgorgement or the return of a part or all of any attorneys fees paid by a debtor. It does not provide for any other remedy. This Court cannot use §105(a) to forge a remedy it desires to have for whatever reasons of equity in the cases of these eight Debtors out of what does not exist within the bankruptcy code. <u>United States Commodity Futures Trading Commission v. NRG Energy, Inc.</u>, 457 F.3d 776, 781 (8th Cir. 2006).

As a result of attorney Robinson having repaid the fees, there is currently no case or controversy that exists before the Bankruptcy Court. The proceedings initiated by this Court to disgorge fees from attorney Robinson are moot. Under such circumstances there is nothing left for this Court to do and it has no authority to proceed further. <u>County of Los Angeles v. Davis</u>, 99 S. Crt. 1379 (1979).

Even actions which occur outside of of litigation can render cases moot when there is nothing left, no remedy, for a court to administer. Under such circumstances a court's only recourse is to dismiss the case for mootness. This can even occur when a case is before a Court of Appeals. <u>Ali v. Cangemi</u>, 419 F.3d 722 (8th Cir. 2005); <u>Simpson v. Camper</u>, 974 F.2d 1030 (8th Cir. 1992); and <u>Sanchez-Reyes v. United States</u>, 2013 U.S. Dist. LEXIS 83019 (ND IA 2013). This Court should, therefore, dismiss all proceedings under all of the Court initiated Proceedings to Disgorge fees in the eight above-captioned cases.

## CONCLUSION

For all of the above stated reasons, this Court should grant Critique Services, LLC's Motion to Dismiss and grant such other and further relief as the Court deems just under the circumstances herein.

Respectfully submitted,

/s/  Laurence D. Mass
Laurence D. Mass            #30977
Attorney for Critique Services, LLC
230 So. Bemiston Ave., Suite 1200
Clayton, Missouri 63105
Telephone: (314) 862-3333 ext. 20
Facsimile:  (314) 862-0605
Email:        laurencedmass@att.net

## CERTIFICATE OF SERVICE

By signature above I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court, Eastern District of Missouri by using the CM/ECF system, and that a copy will be served by the CM/ECF system upon those parties indicated by the CM/ECF system.  An additional copy has been served by email to Mr. Paul Randolph, U.S. Trustee (Paul.A.Randolph@usdoj.gov) and Ms. Kristen Conwell (Kconwell@conwellfirm.com).

By: /s/  Laurence D. Mass